COOK, Appellant v. REZEK, Respondent

(237 N.W.2d 18)

(File No. 11640. Opinion filed December 19, 1975)

Petition for rehearing denied January 23, 1976·

Morgan & Fuller, Mitchell, for plaintiff and appellant.

**Davenport, Evans, Hurwitz & Smith**, Sioux Falls, for defendant and respondent.

DUNN, Chief Justice.

The Circuit Court for the First Judicial Circuit, after trial to the court, denied plaintiff's request for specific performance of a real estate contract. This appeal claims the court erred in not finding (1) that a binding contract existed, and (2) that the breach complained of by the defendant did not warrant the court's denial of specific performance. We reverse.

For the most part the facts are not in dispute. Sometime in 1970 or 1971, defendant John Rezek talked to Don Juffer, a licensed real estate broker and banker from Wagner, South Dakota, about selling some land which the defendant owned. Juffer agreed to act as defendant's agent and see if he could come up with an interested buyer.

On June 27, 1973, the plaintiff, Ted Cook, contacted Juffer concerning the purchase of some farm real estate. Juffer went out to talk to the defendant to see if his 680-acre farm was still for sale. The defendant indicated that it was.

The plaintiff met with Juffer at his office in Wagner on July 12, 1973. Juffer quoted a price of $155 per acre for the land. The offer was not accepted at that time, but plaintiff did go out to look at the farm.

On July 17, 1973, plaintiff went back to Juffer and made an offer to buy the 680 acres for $150 per acre. Along with this offer he gave Juffer a check for $500. The men then drew up a proposed contract. The defendant subsequently rejected the offer when Juffer went out to visit with him. Plaintiff's check was voided and returned to him in the mail.

Plaintiff called Juffer on July 20th to see if defendant had accepted his offer. When he was told that the offer had been rejected, he went to Wagner to see Juffer. This time plaintiff offered $165 per acre for the land, and the two men drew up a contract to that effect. Juffer told plaintiff at that time that his $500 check has been voided and mailed back to him. Plaintiff

said that he preferred not to write a new check until the voided check reached him in the mail. Juffer and the plaintiff then went out to defendant's farm with the proposed contract. They found the defendant working in his hayfield. There the parties signed the contract and shook hands on the deal.

In the contract it recited that the plaintiff was to pay defendant $500 "at or before the execution of this contract." Because the first check at that point had not been received by plaintiff in the mail, no check was written the day the contract was executed. Plaintiff told Juffer that he would give him the check the following Monday. Juffer told him that that would not be possible since he would be out of town on vacation that week. Plaintiff replied that he would give him the check when Juffer returned from his vacation the next Monday, July 30, 1973. On July 30th plaintiff was in Chicago, but he had his wife call Juffer and tell him that he would give him the check on Wednesday, August 1st.

On August 1st the plaintiff did go to see Juffer on other business, but he did not write a check at that time because he had brought along the wrong checkbook. Plaintiff called Juffer on August 3rd and told him that he would give him a check on the following Monday, August 6th.

Defendant began to have misgivings about the sale of his land, and on August 4th he told Juffer that he was not going to go through with the sale. When plaintiff did tender the $500 check to Juffer on August 6th, he was informed by Juffer that the defendant was not going through with the contract. Juffer did keep the $500 check, however, and promised plaintiff that he would go out to see defendant and try to get him to change his mind. When the attempt failed, Juffer returned the check to the plaintiff.

The real issue to be decided on this appeal is whether the 17-day delay by plaintiff in making the first $500 payment defeats his rights to specific performance under SDCL 21-9. The contract contained the standard phrase, "IT IS MUTUALLY AGREED by and between the parties hereto that the time of payment shall be an essential part of this Contract  *  *  *." The contract set out the consideration clause thusly:

"And as consideration therefor the said party of the second part hereby *covenants* and agrees to pay the said party of the first part the sum of One hundred twelve thousand two hundred and 00/100—payable at Commercial State Bank at Wagner South Dakota, in the manner following:

The sum of $500.00 at or before the execution of this contract;

The sum of $1500.00 on the 1st day of September, 1973;

The sum of $5000.00 on the 1st day of January, 1974;

The sum of $20,200.00 on the 1st day of March, 1974;

The balance is payable $4000.00 per year starting March 1, 1975 and every year thereafter with final payment of $49,000.00 due on March 1, 1984 plus accrued interest each year." (emphasis supplied)

The contract further provided for notice and payment for any default:

"In case of the failure of said party of the second part to make either of the payments or interest thereon or any part thereof, or perform any of the covenants on his part hereby made and entered into, then the whole of said payments and interest shall at the election of said first party become immediately due and payable, and this Contract shall at the option of the party of the first part be forfeited and determined by giving to said second party *thirty days' notice in writing of the intention of said first party to cancel and determine this Contract, setting forth in said notice the amount due upon said Contract, and the time and place, when and where, payment can be made by said second party.*" (emphasis supplied)

■ The defendant now contends that the initial payment of $500 under the above covenants to pay was a condition precedent to a binding contract. We cannot accept this contention. We do not interpret the words, "$500.00 at or before the execution of this contract," when read with the rest of the covenants, to be words of a condition precedent, but rather they are words of a covenant which set out when the initial payment should be made. The contract was fully executed and fully enforceable by both the buyer and the seller when the plaintiff's offer was accepted by defendant and the parties entered their signatures on the written contract.

Taking the evidence most favorable to defendant, there is no indication that the initial payment was a condition precedent to a binding contract. First, the defendant knew that he did not receive a $500 payment "at or before the execution of [the] contract." He executed the contract at the farm and the payments were to be made at the Commercial State Bank of Wagner. He states in his testimony that he knew nothing about down payments and that he had "confidence in Don Juffer because I do· banking with him all the time   *   *   *." While Mr. Juffer's testimony was limited to the conclusion that "[t]he contract is not complete unless you have a down payment," he did not deny any of the circumstances that prevented plaintiff from making the down payment some 17 days after the contract was signed, and he never informed the plaintiff or the defendant that the deal was off for nonpayment until the defendant, for personal reasons, decided not to sell the farm. Certainly, the lack of down payment did not influence the defendant's decision to not sell the farm because he knew nothing about when the down payment was to be made according to his own testimony, and Juffer never informed him about the failure of plaintiff to make the payment on time until after the defendant decided to back out on the sale.

■ An action for specific performance is an action in equity, and the equities of each fact situation are of paramount importance. There was a failure on the part of the plaintiff to make the initial payment for a period of 17 days after the contract was signed; however, this delay will not defeat specific performance under SDCL 21-9-5 unless it is material. What

constitutes materiality was well analyzed in Vol. 5A, Corbin on Contracts, § 1175, p. 304. There it is stated:

> "But where the plaintiff has promised a perform-ance that constitutes part or all of the exchange for the defendant's return performance, that which he has failed to perform may be material and 'of the essence' even though the parties did not expressly or impliedly make it a condition of the defendant's duty. Its essential importance, its materiality, is determined with reference to the purposes for which the contract was made, the proportion that it bears to the rest of the contract, the extent of injury that its nonperformance causes to the defendant, and the practices and feelings of the com-munity in like cases."

Using this test we hold that the breach was not material and will not defeat a decree of specific performance. The delay was only of a 17-day duration, the amount involved was only $500 of a $112,200 contract, and the record does not reveal that the defendant was in any way injured by the late payment. What the record does reveal is that the defendant, for personal reasons, realized that he really did not want to sell his land and was using the plaintiff's delay as an excuse for repudiating the contract.

Further there is no indication that the defendant or his agent Juffer ever made any attempt to comply with the procedure set out above in the event of failure to make a payment under the contract. If plaintiff had received written notice he would have had an additional 30 days to cure his breach. The record reveals that he made the $500 payment on August 6, 1973, and attempted to tender a $1,500 payment on September 1, 1973, in compliance with the terms of the contract.

In contrast with the defendant's bad faith in repudiating the contract, we find no bad faith in plaintiff's conduct. He readily wrote out a check for $500 and deposited it with Mr. Juffer when he made his original offer of $150 per acre for the land. The reason he did not write another check with the second offer is because Juffer had voided the first check and plaintiff wanted to account for that check before writing another. It was only due to

nonfortuitous circumstances that the check was not tendered days earlier. Considering all the equities, we must agree with the reasoning of the United States Supreme Court in *Cheney v. Libby*, 1890, 134 U.S. 68, 10 S.Ct. 498, 33 L.Ed. 818. There the court affirmed a lower court's ruling that specific performance should be granted notwithstanding a delay in the payment of one of the installments on the contract. The court stated:

> "Even where time is made material, by express stipulation, the failure of one of the parties to perform a condition within the particular time limited will not in every case defeat his right to specific performance, if the condition be subsequently performed, without unreasonable delay, and no circumstances have intervened that would render it unjust or inequitable to give such relief. The discretion which a court of equity has to grant or refuse specific performance, and which is always exercised with reference to the circumstances of the particular case before it (*Hennessey v. Woolworth*, 128 U.S. 438, 442, 9 S.Ct. 109, 32 L.Ed. 500) may and of necessity must often be controlled by the conduct of the party who bases his refusal to perform the contract upon the failure of the other party to strictly comply with its conditions." (Citations omitted) 10 S.Ct. at 502.

Accordingly, the judgment of the circuit court is reversed, and this case is remanded for further proceedings not inconsistent with this opinion.

All the Justices concur.